# UTAH BANKING CO. v. NEWMAN.

No. 2540. Decided February 6, 1914 (138 Pac. 1146).

1. BILLS AND NOTES—ACTIONS—SUFFICIENCY OF EVIDENCE. Evidence in an action on a note *held* to sustain the court's finding that the party who indorsed the note to plaintiff had neither express nor implied authority from the payee so to do. (Page 196.)

2. PRINCIPAL AND AGENT—INDORSEMENT—AUTHORITY TO INDORSE. The authority of an agent to indorse commercial paper is, on account of its negotiable character, to be strictly construed, and will not be implied from a general authority to transact business for the principal, unless such power is necessary to the accomplishment of the agency. (Page 198.)

3. PRINCIPAL AND AGENT—INDORSEMENT—AUTHORITY TO INDORSE. The authority of an agent to indorse negotiable paper could not be based upon prior customary acts, where it did not appear that the indorsee ever knew of a single instance of the payee's having knowingly ratified an unauthorized indorsement by such agent, since, to base authority on custom, the paper must have been taken upon the indorsee's faith in the agent's authority caused by such custom. (Page 199.)

4. APPEAL AND ERROR—REVIEW—HARMLESS ERROR—ERRORS NOT AFFECTING RESULT. Errors, if any, in the rulings on evidence were without prejudice, where the result would not have been changed if the court had ruled as requested by appellant. (Page 200.)

5. BILLS AND NOTES—NEGOTIABILITY—CERTAINTY AS TO AMOUNT—ATTORNEY'S FEES. A provision in a note for the payment of a reasonable amount as an attorney's fee did not destroy its negotiable character by making the amount to be paid uncertain.[1] (Page 201.)

APPEAL from District Court, Fourth District; *Hon. A. B. Morgan,* Judge.

Action by Utah Banking Company against F. W. Newman.

---

[1] McCornick v. Swem, 36 Utah, 6, 102 Pac. 626, 20 Ann. Cas. 1368.

Judgment for defendant. Plaintiff appeals.

AFFIRMED.

*C. S. Patterson* for appellant.

*Harvey Cluff* for respondent.

FRICK, J.

This action was commenced by the plaintiff, appellant here, as indorsee of the promissory note sued on. In the complaint it was, in substance, alleged that appellant is a corporation, and that on the 1st day of November, 1909, the defendant, F. W. Newman respondent in this court, made and delivered to the "Baldwin Company," a corporation, his promissory note for the sum of $250, payable to the order of said company as follows: $125 on November 1, 1909 and $125 on January 1, 1910, with ten per cent. interest after maturity; that the sum of $125 was duly paid; that, before the maturity of said note, "the same was duly transferred by said Baldwin Company to this plaintiff in the regular course of business, and the plaintiff is now the owner and holder thereof"; that the note provides for the payment of a reasonable attorney's fee in case suit is brought to collect the same, and that $100 is a reasonable fee. Judgment was prayed for said sum of $125, with interest as aforesaid, and for an attorney's fee. The respondent filed an answer to the complaint, in which he admitted the corporate capacity of appellant and the Baldwin Company, admitted the execution of the note sued on, and denied all other allegations of the complaint. As an affirmative defense, he pleaded that the note sued on was given by respondent to the Baldwin Company for a certain piano of which said company was the owner and which was purchased by him; that the note in question never was delivered to the Baldwin Company, but was "unlawfully and fraudulently delivered" to the appellant by one H. E. Giles, Jr.; that the respondent was thereafter compelled to pay to the Baldwin Company the consideration for said piano, and

that said appellant "unlawfully and fraudulently retains possession of said note without any consideration whatever." A trial to the court without a jury resulted in a judgment in favor of respondent, from which judgment this appeal is prosecuted.

While the issues are not as clearly defined by the pleadings as they should be, yet it appears from the record that the parties clearly understood each other's claims, and that the case was tried upon the following propositions:

(1) That the H. E. Giles, Jr., mentioned in the answer, and to whom the note sued on was delivered by respondent, was, at the time the note was given, not the agent of the Baldwin Company, the ostensible indorser; and (2) that, if he was the agent, he nevertheless was without authority to indorse the notes that were given for the purchase price of pianos, and which were made payable to the order of the Baldwin Company, the owner of said pianos.

While appellant's counsel has assigned a number of errors, yet, in his brief, the principal one relied on is the one that the court erred in finding that said Giles, Jr., did not have authority to indorse the note in question, for the reason that upon that question the evidence is all one way, and shows that he had such authority. In view of the conclusion reached, it is not necessary for us to consider the question of whether said Giles, at the time the note was given and indorsed by him, was the agent of the Baldwin Company. We shall therefore dispose of the case upon the sole question of whether said Giles had authority to indorse the note or not. Appellant, in support of its contention that said Giles was the agent of the Baldwin Company, and that he had authority to take notes made payable to the order of said company and to indorse them, produced the note sued on in evidence, from which it appeared that it was dated November 1, 1909; that it was given for $250, $125 of which was payable on the day it bore date, and the remaining $125 on January 1, 1910, with ten per cent. interest after maturity; that the note was given for a certain piano which respondent purchased from said Giles, and which was the

property of the Baldwin Company; that the note was made payable to the order of the Baldwin Company; that it provided for a reasonable attorney's fee, and was by said Giles sold to the appellant, and by him indorsed as follows: "Pay to the Utah Banking Co., The Baldwin Co., per H. E. Giles, Jr." The payment of the $125 was also indorsed on the note. Appellant also produced in evidence a written agreement dated May 9, 1909, entered into by said Giles and the Baldwin Company wherein said company agreed to consign to said Giles pianos for sale upon the terms and conditions in said agreement expressly stated. There is absolutely nothing in said agreement which confers either express or implied authority upon said Giles to indorse the notes which might be taken if, in any case, said Giles did not sell the pianos consigned to him under the agreement for cash. Appellant also produced in evidence certain letters that were written by one H. G. Wilson, as the representative of the company, but what the nature or character of his authority was is not shown. Some of the letters aforesaid were directed to Giles & Amtoft, and others to H. E. Giles, Jr., personally. The letters were all written on and between the 24th day of April, 1909, and the 8th day of June following, and some months before the note in question was given. There is nothing in any of the letters which conferred any authority upon said Giles to indorse notes which were made payable to the Baldwin Company or order. Those letters, however, do show that, during the period of time in which they were written, said Giles was engaged in selling pianos belonging to the Baldwin Company. There is other evidence which was produced by appellant, but none which established the fact that said Giles had express authority to indorse the Baldwin Company notes.

The respondent produced a Mr. Wood as a witness, who, among other things, testified as follows:

"My home is in Denver, Colo. I am working for the Baldwin Company. I am wholesale representative of the Baldwin Company, superintending agencies, looking after agents and collections and settlements, whenever it is neces-

sary, in the name of the company." After showing further his connection with the business affairs of the company, and his authority, he was asked the following question: "Did Mr. Giles during that period from September 7 to November 1 (1909), or at any other time, ever have any right, power, or authority, or instructions from you, or under any contract that you made with him, to indorse your paper?" The witness answered, "No sir." The record shows that the reference in the foregoing question was to the Baldwin Company paper. The witness also, in other terms, denied the authority of Mr. Giles to indorse the company's paper, but, in that connection, also admitted that Mr. Giles was employed by the Baldwin Company to sell its pianos during the year 1909, but insisted that the agency was severed some time in September of that year. It is from the admissions of this witness that Giles was engaged in selling pianos for the Baldwin Company that appellant's counsel says the authority claimed by him is made to appear. Whether Mr. Giles was clothed with express authority to indorse the paper of the Baldwin Company was certainly a question of fact, and whether he had implied authority or not was perhaps one of mixed law and fact. From all the evidence produced before the trial court, that court certainly was justified in finding no express authority was ever conferred on Mr. Giles to indorse the paper of the Baldwin Company, regardless of how he obtained such paper. Nor do we think there is anything in the evidence from which such authority may be deduced either as a matter of law or fact.

In 1 Daniels, Negotiable Instruments (6th Ed.) section 292, the general rule respecting the implied authority of an agent or attorney to indorse the paper of his principal is stated thus:

"When the authority to execute or indorse a negotiable instrument is sought to be deduced from an agency to do certain other acts it must be made to appear affirmatively that the signing or indorsement of such an instrument was within the general objects and purposes of the authority which was actually conferred. And in interpreting the authority of the agent, it is to be strictly con-

strued. Thus a general authority to transact business for the principal will not authorize the agent to bind him as a party to negotiable paper, according to many authorities, and the general principles of the law of agency."

The author in the sections immediately following the one quoted from, gives many concrete instances from which it was held by the courts that authority to indorse paper could not be implied. An examination of those sections will disclose that, from the undisputed facts in this case, no implied authority existed in Mr. Giles to indorse the note in question.

Nor is there any merit in the contention that Mr. Giles' authority could be implied from his prior customary acts. In our judgment, there is not sufficient evidence in this case to justify a finding that Mr. Giles had theretofore indorsed the paper of the Baldwin Company, and that such acts on his part were known to and approved by said company, if, in fact, any such indorsements were made by him. But, assuming that there was some evidence of that fact, yet the appellant has not brought itself within the rule which would authorize a recovery upon that ground. The author just quoted from, in section 297 of the volume referred to, points out that the paper "must have been taken upon the faith of prior customary acts" before the holder thereof can recover. There is absolutely nothing in this record to show that appellant knew of a single instance where the Baldwin Company had knowingly ratified an unauthorized indorsement made by Mr. Giles, if he made any such; nor that, if it knew of such an instance, it purchased the note in question upon the faith of such a ratification.

The following cases will be found to be squarely in point upon the question that, under the undisputed facts of the case at bar, Mr. Giles had neither express nor implied authority to indorse the note in question. (*Jackson Paper Mfg. Co. v. Commercial Nat'l Bank,* 199 Ill. 151, 65 N. E. 136, 59 L. R. A. 657, 93 Am. St. Rep. 113; *Davis v. Rockingham Inv. Co.,* 89 Va. 290, 15 S. E. 547; *Englehart v.*

*Peoria Plow Co.,* 21 Neb. 41, 31 N. W. 391.)    See, also, cases cited in the first two cases above referred to.

In 31 Cyc. 1381, the general rule is stated as follows:

> "Commercial paper passes current to a limited extent like money, and accordingly power to an agent to make or indorse it is to be strictly limited, and will never be lightly inferred. The most comprehensive grant, in general terms, of power to an agent confers no power to subject the principal to liability on such paper, unless the exercise of such power is so necessary to the accomplishment of the agency that such intent of the principal must be presumed in order to make the power effectual."

Suppose the Baldwin Company did at a certain time authorize Mr. Giles to sell pianos and to receive either cash or notes in consideration for them, which fact we think is clearly established, yet would any one contend that this would confer authority by implication upon him to indorse the notes received by him for a sale made by him at any time? To so hold would be contrary to all authority upon the subject. Nor does the doctrine that either express or manifestly implied authority of the agent to indorse the paper of his principal must be shown work a hardship on any one. The purchaser of commercial paper, in purchasing from an agent, always has the right and option to insist that the agent prove his authority to indorse. If the agent has such authority, he, as a general rule, can easily prove it; but, if the principal should be held bound by the acts of an agent in indorsing paper merely because the agent has the power to sell the chattel for which the paper in question was given, no principal could safely authorize any agent to sell property.

While the appellant has also assigned error upon the rulings of the court in excluding and in admitting certain evidence, yet these rulings, even though the court had technically erred, in no way have affected any substantial rights of the appellant. Those rulings, of which the appellant perhaps had a right to complain, were not prejudicial to it, since the result would necessarily be

the same whether the court had ruled as its counsel requested or not. As to the others, it is not in a position to complain.

Counsel for respondent, however, contends that the judgment must be upheld because the note in question was not negotiable for the reason that it contained a provision for the payment of a reasonable amount as an attorney's fee which made the amount to be paid uncertain. That precise question was decided by this court against respondent's contention in *McCornick v. Swem*, 36 Utah, 6, 102 Pac. 626, 20 Ann. Cas. 1368. We there held that such a provision in a note neither affects nor destroys its negotiable character.

For the reasons stated, the judgment should be, and it accordingly is, affirmed, with costs to respondent.

McCARTY, C. J., and STRAUP, J., concur.