MIDLAND SAVINGS & LOAN COMPANY *v.* HOME BUILDING & SAVINGS ASSOCIATION.

Opinion delivered May 14, 1928.

*Pratt P. Bacon,* for appellant.

SMITH, J. Mrs. Emma E. Shields and James S. Shields, her husband, brought this suit against J. T. Ford, Home Building & Savings Association, of Fort Smith, Arkansas, Dan Dewberry, and the Midland Savings & Loan Company of Denver, Colorado, and for cause of action alleged: That plaintiff, Mrs. Shields, owns a house and lot in the city of Texarkana, and on March 20, 1925, borrowed $1,100 from the Home Building & Savings Association, hereinafter referred to as the Home Association, and, as security therefor, executed a deed of trust on her lot. That thereafter, to pay off this loan and to secure additional funds, she obtained a loan from the Midland Savings & Loan Company, hereinafter referred to as the Midland Company, for $1,600, on December 10, 1926, and, as security therefor, executed a deed of trust on the lot. The check evidencing the last loan was sent by the Midland Company to Dan Dewberry, its agent at Texarkana, with directions to discharge the prior incumbrances, which consisted of the deed of trust to the Home Association, and one to Dewberry himself, securing an indebtedness of $209.86, and another to J. T. Ford, evidencing an indebtedness of $.................... That

Dewberry placed the deed of trust to the Midland Company of record, but embezzled the money, and failed to discharge the prior liens. There was a prayer that the equities of the parties be adjudged, and for general relief.

The Midland Company filed an answer, denying that Dewberry was its agent, and praying the foreclosure of its deed of trust.

The Home Association filed an answer, alleging the priority of its deed of trust, and praying the foreclosure thereof.

A receiver was appointed to take charge of the property, and, after much testimony had been taken, the court, on the final submission, entered a decree which contained the following recitals of fact: That Dewberry conceals himself, so that a summons cannot be served upon him. That, in closing up the loan made by the Midland Company, Dewberry acted as and was the agent of that company, and that he was directed, out of the proceeds of the check of the Midland Company, to satisfy all prior liens.

Upon these findings of fact the court decreed that the Dewberry mortgage had been paid, and it was canceled; that the indebtedness due the Home Association was a first lien, and that the Midland Company loan was extinguished to the extent of the debt due the Home Association, for the reason that its agent should have paid the same, and that, if the Midland Company satisfied the indebtedness due the Home Association, it should then have a first lien for the full amount of its debt, otherwise the Midland Company should have a second lien, and that only to the extent of the difference between the amount of its debt and the debt to the Home Association.

There appears to have been no adjudication of the rights of Ford, as the testimony showed that the mortgage in his favor had been paid and duly canceled. The foreclosure of the deeds of trust was decreed and the

equities of the parties declared as stated, and from this decree the Midland Company has appealed.

It appears from the facts stated that the question presented by this appeal is purely one of fact, that fact being whether Dewberry was the agent of Mrs. Shields or the agent of the Midland Company in closing up the loan made by that company.

It was shown in the testimony that Shields and his wife were indebted to J. T. Ford in a sum which was secured by a mortgage on the lot, and that they applied to Dewberry for assistance in procuring a loan, and that Dewberry procured a loan for them from the Texarkana Building & Loan Association, with the proceeds of which the Ford mortgage was paid. Later Shields and wife desired to retire the Texarkana Building & Loan Association loan, and they again applied to Dewberry for assistance, and he negotiated the loan above referred to from the Home Association, and with the proceeds of that loan he paid the Texarkana Building & Loan Association and returned to Shields and wife the canceled note to the Texarkana Building & Loan Association and the deed of trust securing the note given it.

Shields and wife had a long and intimate acquaintance with Dewberry, and, after obtaining the loan from the Home Association, Dewberry made to Mrs. Shields a personal loan of $209.86, and as security therefor took a mortgage on the lot. Later application was made by Mrs. Shields to Dewberry to procure the loan from the Midland Company for the purpose of paying off the loan to the Home Association and the Dewberry mortgage, and of making certain repairs to the house. The application for the loan stated the purposes to which the proceeds of the loan would be devoted, and the Midland Company wrote Dewberry a lengthy letter of instructions in regard to closing up this loan. The check from the Midland Company was made payable to Shields and wife and to Dewberry as agent, and the managing officer of the Midland Company testified that this was done in

order that Dewberry might, by following the letter of instructions, acquire for that company a first lien on the property. This officer denied that Dewberry was the agent of the Midland Company, and testified that Dewberry was acting as the agent of Mrs. Shields, and without expectation of compensation for his services on the part of the Midland Company, and that Dewberry did not present the Midland Company any bill for his services, and nothing was paid him.

It appears to have been the practice of the Midland Company, in making loans, to sell the borrower stock of the company in a sum equal to the amount of the loan, with which, when the stock was matured, the loan was discharged. This stock was paid for in monthly payments, and Dewberry was authorized to receive these payments and remit them to the company, and, as compensation for this service, he received one per cent. of the amount of the monthly payments.

The letter of the Midland Company transmitting the check to Dewberry was offered in evidence, and this is the letter which gave the specific directions as to the disbursement of the proceeds of the check. This letter contained the statement that "in closing this loan you act as our agent."

This letter required Dewberry to pay the prior deeds of trust, to take out a policy of insurance on the house, payable to the Midland Company, to take a receipt from the contractor for the repairs to the house, and to deliver to Mrs. Shields a passbook in which receipts would be noted for the monthly payments on the building and loan stock contemplated as a part of the loan.

Mr. and Mrs. Shields testified that Dewberry presented the check to them, and they indorsed it and returned the check to him for collection, as he was also a payee therein, in order that he might discharge the requirements of the Midland Company in regard to closing the loan. They did not thereafter ask Dewberry if he had properly applied the proceeds of the check, nor

did they demand of him their canceled notes and deeds of trust, but they supposed he had properly attended to these matters, and were not advised to the contrary until Dewberry absconded.

The case stated is somewhat similar to the case of *Commonwealth Farm Loan Co.* v. *Wall,* 122 Ark. 281, 183 S. W. 193, and is controlled by it. The syllabus in that case reads as follows:

"Appellee, whose property was subject to a mortgage, desired to procure a loan from appellant, which appellant agreed to make, it being agreed that the existing mortgage be paid off out of the mortgage to appellant. Appellant sent the money to its local correspondent at the place of appellee's residence, with instructions, but the local correspondent appropriated the money to his own use, without applying the money as directed. *Held,* in determining as between appellant and appellee as to whose agent the intermediary was, and upon whom the loss would fall, the controlling question is one of fact for whom was the agent or intermediary acting in the particular transaction; and *held* further, in this particular case, that the intermediary was the agent of and acting for appellant, that the duty to satisfy the existing mortgage was within the apparent, if not the actual, scope of his authority, and that appellant, who held him out as his agent, must sustain the loss."

In that case, as in this, the controlling question is the question of fact, for whom was the intermediary agent?

The court found the fact to be that Dewberry was the agent of the Midland Company, and we think that finding is not contrary to the preponderance of the testimony, and, that being true, the Midland Company, as Dewberry's principal, must suffer the loss resulting from its agent's dishonesty. The court was correct therefore in holding that the note from Shields and wife to the Midland Company had been discharged to the extent of the balance due the Home Association which the Midland

Company's agent should have paid out of the proceeds of the check transmitted to Dewberry for that purpose.

The decree of the court below must therefore be affirmed, and it is so ordered.