## O. J. Lewis Mercantile Company *v.* Harris.

### Opinion delivered November 13, 1911.

Bills and notes—payment upon unauthorized indorsement.—The drawee of a draft, payable to order, who pays upon a forged or unauthorized indorsement does so at his peril.

Appeal from Pulaski Circuit Court, Second Division; *F. Guy Fulk*, Judge; reversed.

*Moore, Smith & Moore* and *H. M. Trieber*, for appellant.

Where a creditor draws upon his debtor an instrument payable to order, and the instrument so drawn falls, without indorsement of the payee, into the hands of one not authorized to receive the same, who indorses it and collects from the debtor, delivering to him the instrument, such payment is at the peril of the debtor, and his obligation is not discharged. Daniel on Neg. Instruments, (3d ed.), par. 574; *Id.* par. 1230; 50 N. Y. 410; 19 Ill. 572; 80 Ky. 289; 91 N. Y. 106; 70 N. W. (Ia.) 769; 17 N. Y. 205; Story on Bills of Exchange, 587; 86 N. W. (Neb.) 483; 36 S. W. (Tenn.) 387; 66 Pac. (Cal.) 326; 52 S. W. (Ky.) 848; 51 N. E. (Mass.) 16; 48 Atl. (R. I.) 480; 98 Ark., 1; 10 Ark. 18; 13 Ark. 648.

*Manning & Emerson*, for appellee.

1. Appellant's contention is untenable because of the fact, which they concede, that the "undoubtedly prevalent practice is to pay a to-order instrument upon presentment without inquiring of the holder his authority. Men take up paper in this way every day." Such being the established practice, the transaction becomes one in due course of business, and the appellee in following the practice must be protected in the payment of the draft. These transactions are protected, both because made in due course of trade, and upon the principle that the authority of the agent is presumed, and that he acts within the scope of his authority. 84 Ark. 257; 58 Pac. 509-15, 28 Cyc. 977; 25 Ark. 219.

2. Drafts and bills of lading with invoices may be transferred by delivery without indorsement. 69 N. Y. 373; Daniel on Neg. Instruments, (3 ed.), § 573; 60 Barb. 196. Payment may be rightfully made to the holder of a note where the maker acts in good faith and has no reason to suspect that the holder

is not the rightful owner.   24 La. Ann. 336; 29 Me. 133; 36 Wis. 554.

3.   Since, at the conclusion of all the evidence, there was practically no dispute as to the facts, the question became one of law, and the court was correct in passing upon it.   30 Cyc. 1294;   100 Ark. 37.

4.   The bill of lading required no indorsement; and when the appellant elected to attach a draft made payable to the order of the bank and to transmit the same by mail, it assumed all risk incident thereto, including the risk of its loss or falling into the hands of dishonest persons.   If, as has been held by this court, a remittance of money by mail is at the risk of the party mailing it, the remittance by mail of a bill of lading worth over $350 in the hands of any person holding it would also be at the risk of the party mailing it.   17 Ark. 429.

5.   The presumptions arising from the facts in the case are all in favor of appellee.   He being in possession of the draft with apparently proper indorsement thereon, and of the bill of lading which required no indorsement, such possession raises a presumption of payment.   9 Enc. of Ev. 704 and cases cited.

If the letter containing the draft and bill of lading was lost, not in the mail, but after its receipt by the bank, then the presumption of carelessness on its part arises, and the burden was on appellant to overcome this presumption of negligence with proof that it was not lost through the fault of the bank.   Zane on Banks and Banking, § 185, and authorities cited.

The law presumes, also, that the bank received the letter containing the draft and bill of lading.   60 Ark. 539; 4 Am. & Eng. Enc. of L., (2 ed.), 424, 425; 7 Id. 135; 19 Id. 608; 73 Ark. 194-8; 74 Ark. 16; 93 Ark. 252-9; 98 Ark. 287, 135 S. W. 913.   It was incumbent upon appellant to close up every avenue through which the draft might have passed, before it would be relieved of the presumption imposed by law.   93 Ark. 162.

McCULLOCH, C. J.   Defendant, N. Harris, is engaged in the second-hand clothing business in the city of Little Rock, and in August, 1910, he purchased a bill of goods from plaintiff, O. J. Lewis Mercantile Company, a corporation engaged in

the wholesale business at St. Louis. The bill amounted to $403.04, and defendant paid $50 in cash, reducing it to $353.04, and it was agreed that the plaintiff should ship the goods to Little Rock and forward its draft on defendant, with bill of lading attached, through the German National Bank of Little Rock for the amount of the bill. This was done on August 31, 1910, the draft being in ordinary form payable to the order of the German National Bank, and the same was duly deposited in the mails, addressed to that bank. Subsequently, plaintiff instituted this action against defendant in the circuit court of Pulaski County to recover the amount of said account, claiming that the draft had never been paid. Defendant answered, pleading payment of the draft, and upon this issue the case was tried before a jury.

The defendant produced the draft in question with the following indorsement stamped thereon with a rubber stamp: "German National Bank—Paid September 2, 1910—Little Rock, Ark." Defendant testified that between 4 and 5 o'clock on the afternoon of September 2, 1910, a young man appeared at his place of business, representing himself as a collector for the German National Bank, and presented this draft for payment, and that, after borrowing part of the amount from two of his neighbors, he paid the amount to the young man, and the draft was surrendered to him. He stated that he was not acquainted with the young man, and had never seen him before nor since. He introduced another witness who corroborated his statement as to the payment of the draft.

It was agreed that the German National Bank had never accounted to the plaintiff for said amount or any part thereof, and that the plaintiff had never received anything in satisfaction of the draft or the account.

Four of the employees of the bank were introduced, who testified that they had exclusive charge and control of the bank's collection department, that they had no recollection of any such draft having passed through the bank, and that there was no trace thereof upon the records of the bank. Other evidence tended to show that the daily mail coming to the bank was placed in charge of the head of the collection department, who was one of the witnesses, and who opened it. Other testimony also tended to show that it was possible for other

employees of the bank to come in contact with the mail before it actually passed into the hands of this witness who opened it. The testimony of one of the witnesses tended to show that there was no such stamp used by the bank similar to the one which made the impression on the draft in defendant's hands.

In this state of the proof the trial judge instructed the jury to return a verdict in favor of the defendant.

We are of the opinion that the court erred in giving this instruction, and that the question as to payment of the draft should have been submitted to the jury under proper instructions. The evidence tended to establish the fact that the bank never received the draft, and that it was paid by the defendant, if at all, on an unauthorized or forged indorsement. The testimony was sufficient to warrant a finding to that effect, and this would have called for a judgment in favor of the plaintiff. It is now too well settled to need citation of authority that the holder of commercial paper, payable to order, must trace his title through a genuine indorsement, and that the drawee of a draft, payable to order, who pays upon a forged or unauthorized indorsement, does so at his peril. *Sims* v. *American National Bank*, 98 Ark. 1; *First National Bank* v. *Whitman*, 94 U. S. 343; *Shipman* v. *Bank*, 126 N. Y. 318; *Bank of North America* v. *Merchants National Bank*, 91 N. Y. 106; *Chism* v. *First National Bank*, 36 S. W. 387; *Henderson Trust Co.* v. *Ragan*, 21 Ky. Law R. 601; *Barnett* v. *Ringgold*, 80 Ky. 289, 52 S. W. 848; *Janin* v. *Bank*, 92 Cal. 14, 14 L. R. A. 320; *Garthwaite* v. *Bank of Tulare*, 123 Cal. 132, 66 Pac. 326; *German Savings Bank* v. *Citizens National Bank*, 101 Iowa 530, 70 N. W. 769; *Chicago, B. & Q. R. Co.* v. *Burns*, (Neb.), 86 N. W. 483; *Com.* v. *Foster*, 114 Mass. 311; *Winslow* v. *Everette National Bank*, (Mass.) 51 N. E. 16.

If the draft which was sent through the mail never reached the bank, it remained the property of the plaintiff, and title thereto could not be divested through a forged indorsement. *Garthwaite* v. *Bank of Tulare, supra.*

If it actually reached the bank, and was fraudulently or wrongfully abstracted, indorsed and collected by some unauthorized person, neither the bank nor the plaintiff was bound thereby. *Kellogg* v. *Norris*, 10 Ark. 18; *Walker* v. *Scott*,

13 Ark. 644; *Chicago, B. & Q. R. Co.* v. *Burns, supra; Double-day* v. *Kress,* 50 N. Y. 410; *Shipman* v. *Bank, supra.*

The case of *Barnett* v. *Ringgold, supra,* was very similar to the present case, and the court, in disposing of it, said:

"The indorsement on the note was a special authority to the bank authorizing it to make the collection of the note, and the bank, or its agents authorized to act for it, were the proper parties to whom the payment should have been made, and by whom the note could have been legally presented for payment. The payment by the appellant to an unknown holder or stranger who had no right to collect it, either as agent in fact or *bona fide* owner, in the face of the special indorsement to the bank for collection by the appellees, was made at his own risk, as the possession with such an indorsement was notice to him that none but the bank or its agents, were authorized to collect the note or receive the money thereon. The appellees adopted the natural and proper method of informing the appellant of the fact that they had constituted the bank their agent for collection, and, had he taken the precaution which ordinary prudence dictates, and read the indorsement plainly written upon the back of the note, he could have ascertained whether the person presenting it was the proper person to whom payment should have been made; and, having paid the note to a fraudulent holder, if, indeed, he paid it to any one, the appellant must suffer the loss because he took the risk."

Learned counsel for defendant rely on *Fidelity Mutual Life Ins. Co.* v. *Click,* 93 Ark. 162, as sustaining the ruling of the court in giving a peremptory instruction. That case is not, however, in point. There the plaintiff relied, as evidence of payment, on a receipt which was admitted to be genuine, and defendant insurance company contended that the receipt was mailed to the insured by mistake, and that payment had not been made. Several witnesses, employees of defendant, testified to that effect, and it was insisted by defendant that, notwithstanding the receipt in the hands of plaintiff, the proof was undisputed that no payment had in fact been made, and that the court should have given a peremptory instruction in its favor. We said that possession of the receipt raised a presumption of payment, and that it devolved on defendant, in order to overcome it, so as to make the proof undisputed, to

"close up by affirmative proof every avenue through which payment could have been made." We did not hold that the possession of the receipt was conclusive evidence of payment, or that defendant had to close up "every avenue through which payment could have been made" in order to be entitled to go to the jury on the question of payment.

The court having erroneously taken the case from the jury by a peremptory instruction, the judgment is reversed, and the cause remanded for a new trial.