Opinion delivered November 25, 1929.

*Daily & Woods* and *Henry Moore, Jr.,* for appellant.
*John D. Arbuckle,* for appellee.

SMITH, J.   The Home Building & Savings Association is a domestic corporation, having its principal place of business at Fort Smith, and is engaged as a building and loan company in making loans on real estate, to be repaid by maturing building and loan stock sold to the borrower for that purpose. The details of its method of operating are set out in the opinions in the cases of *Midland Savings & Loan Co.* v. *Home Building & Savings Assn.,* 177 Ark. 236, 6 S. W. (2d) 5; *Gate City Building & Loan Assn.* v. *Crowell,* 177 Ark. 539, 7 S. W. (2d) 329; and *Lavender* v. *Buhrman-Pharr Hdw. Co.,* 177 Ark. 656, 7 S. W. (2d) 755.   The facts stated in these opinions are explanatory of those out of which this litigation arises.

The Home Building & Savings Association, hereinafter referred to as the association, had a resident agent at Texarkana named Dewberry, who was clothed with full authority to act for the association in all matters relating to applications for loans and in closing them up, and it was usual, in the discharge of the duties of his agency,

for him to disburse money loaned to borrowers in satisfying existing liens upon the property offered as security for the loans; in fact, this duty was intrusted to Dewberry and to no one else, and it is not questioned that, in the discharge of this duty, he was acting as the agent of the association.

After an application for a loan had been approved by the association, the custom was to make a check for the amount of the loan payable to the joint order of Dewberry and the borrower, and the instructions to Dewberry were to procure the indorsement of the check by the borrower and to indorse it himself, and, after cashing the check and discharging any existing liens with the proceeds thereof, to pay the excess, if any, to the borrower. These checks were always sent to Dewberry.

The secretary of the association, whose office is in Fort Smith, admitted in his testimony that he knew that Dewberry's practice was to have the mortgagors indorse the checks, and to deposit them to his agency account, after indorsing them himself, at a bank in Texarkana, and to then issue his personal checks against this account in satisfaction of prior liens, and, if there was any excess, the amount thereof was paid to the borrower by a check drawn by Dewberry on this agency account.

The association carried a commercial account with the Merchants' National Bank of Fort Smith, hereinafter referred to as the bank, and the checks to the joint order of Dewberry and the borrower heretofore referred to were drawn against this account.

Applications in proper form were forwarded by Dewberry to the association which apparently had been made by H. C. McDaniel and S. E. Green, and when, in due course, the applications had been approved, checks were forwarded for the loans applied for. One of these checks was payable to the order of Dewberry and McDaniel, and the other to the order of Dewberry and Green, and both were sent direct to Dewberry.

It was a part of Dewberry's duty, as agent for the association, to receive the monthly payments on the stock issued to the borrowers for the purpose of maturing the loans, and to forward the payments to the association. After the ostensible loans had been made to McDaniel and Green, Dewberry made monthly remittances on account thereof to the association as the loan agreements contemplated, and it was assumed by the association that these remittances covered payments made by McDaniel and Green.

The entire transaction proved to be a fraud and a part of Dewberry's general scheme to swindle, and, when he realized that his peculations could not longer be concealed, he absconded and left for parts unknown, and the officers of the law have been unable to serve a warrant which was issued for his arrest. Dewberry left no property behind him. The date of Dewberry's flight was about April 1, 1927.

After Dewberry's flight, suits were brought to foreclose the mortgages purported to have been given the association by McDaniel and Green, but the defense was successfully interposed in those suits that the transactions were fraudulent, and that McDaniel and Green had not received any money from Dewberry, and that the indorsement of their names on the checks payable to their joint order with that of Dewberry were forgeries. The bank knew nothing of these defenses until after decrees favorable to McDaniel and Green had been rendered in the foreclosure proceedings, and the association itself appears to have been ignorant of these defenses until about two months before the suits were tried.

In the meantime the bank at Texarkana, where Dewberry carried his agency account, and where he had cashed the checks above referred to, had liquidated its affairs and had gone out of business.

Suits were then brought against the bank by the association for having cashed the checks upon forged indorsements. The cases were tried by the court sitting

as a jury, and numerous findings of fact were made and others were refused, to all of which exceptions were saved by the party adversely affected. The court found the fact to be that the indorsement of the check in the McDaniel case was a forgery, while that in the Green case was genuine, and upon this finding rendered judgment against the bank in the McDaniel case, and in its favor in the Green case, and both parties have appealed.

The finding of fact in the Green case would, of course, be conclusive of it if there is sufficient testimony to support that finding, but we do not review the testimony as to the genuineness of these signatures, as, in our opinion, it is unnecessary to do, as we think the bank is not liable in either case under the undisputed facts developed at the trial from which this appeal comes herein stated.

Dewberry was the agent of the association, and no loss would have been sustained but for his rascality practiced in the discharge of his agency. McDaniel and Green were named as payees in the checks, but the checks were not sent to them. The proceeds of these checks reached Dewberry's hands and were credited to his agency account, and this is exactly what would have happened had the checks been properly indorsed. The loss was sustained through Dewberry's improper use of the money after it came to his hands. It is true the money did not reach his hands in the manner the association expected, but it is nevertheless true that it did reach him and was credited to his agency account, and was thereafter misused, and thus the loss was caused.

The case is sufficiently similar to that of *Cureton* v. *Farmers' State Bank,* 147 Ark. 312, 227 S. W. 423, to be controlled by it. The facts in that case were that Cureton took a mortgage, as he supposed, from A. J. Carmon to secure advances of money to be subsequently made. But the mortgage was executed by H. V. Carmon, who falsely represented that he was A. J. Carmon, and, upon the security of this mortgage, checks were delivered to H. V. Carmon, payable to the order of A. J. Carmon,

468

which were cashed upon presentation by H. V. Carmon at the bank upon which they were drawn. These checks were charged by the bank against the account upon which they were drawn, and, when Cureton discovered the deception which had been practiced upon him, he brought suit against the bank for the amount of these checks. In denying Cureton's right to recover we said:

"This court, in *O. J. Lewis Mercantile Co.* v. *Harris,* 101 Ark. 4-7 [140 S. W. 981], announced the well-established doctrine that 'the holder of commercial paper, payable to order, must trace his title through a genuine indorsement, and that the drawee of a draft, payable to order, who pays upon a forged or unauthorized indorsement, does so at his peril.' See also *Koen* v. *Miller,* 105 Ark. 152, 150 S. W. 411. But, as is said, in *Land Title & Trust Co.* v. *Northwestern National Bank,* 196 Pa. 230, 46 A. 420, 79 Am. St. Rep. 717:. 'This doctrine is confined to cases in which the depositor has done nothing to increase the risk of the bank. It should not apply when the check is issued to one whom the drawer intends to designate as the payee: First, because in such a case the risk is not the ordinary risk assumed by the bank in its implied contract with its depositor, but a largely increased risk, as it follows that a check thus fraudulently obtained will be fraudulently used. The bank is deprived of the protection afforded by the fact that a *bona fide* holder of a check will exercise care to preserve it from loss or theft, which are the ordinary risks. There is thrown upon the bank the risk of antecedent fraud practiced upon the drawer of the check, of which it has neither knowledge nor means of knowledge; secondly, because in such a case the intention with which the drawer issued the check has been carried out. The person has been paid to whom he intended payment should be made; there has been no mistake of fact, except the mistake which he made when he issued the check, and the loss is due, not to the bank's error in failing to carry out his intention, but primarily to his own error

into which he was led by the deception previously practiced upon him.' *McHenry* v. *Old Citizens' National Bank,* 85 Ohio St. 203, 97 N. E. 395, 38 L. R. A. (N. S.) 1111; *Meridian National Bank* v. *First National Bank,* 7 Ind. App. 322, 33 N. E. 247; *Robertson* v. *Coleman,* 141 Mass. 231, 4 N. E. 619. If it be conceded that the appellant was guilty of no negligence in delivering the checks to H. V. Carmon, and that appellee bank and the appellant were both innocent in the transaction, which must result in financial loss to one or the other of them, then the case under the facts would come clearly within that principle of natural justice and equity which requires that, as between two innocent parties, the loss must fall upon that one whose acts contributed most to produce it. See *Stout* v. *Bemoist,* 39 Mo. 277, 90 Am. Dec. 466, and cases there cited.''

So here, the checks were not sent to McDaniel and Green, and they were not advised by the association that checks had been issued and sent to Dewberry, in which they were named as payees along with Dewberry, and the proceeds of the checks were credited to Dewberry's agency account, as was intended, although not in the manner intended. One of two innocent persons must suffer, and it is our opinion that the loss should fall upon the association, because its acts contributed most to produce it.

The judgment on the appeal of the bank will be reversed, and on the cross-appeal of the association will be affirmed, and judgment will be entered here in accordance with this view.