Thea CLEMENS *v.* FIRST NATIONAL BANK OF
BERRYVILLE, AR.

85-40                                    692 S.W.2d 222

Supreme Court of Arkansas
Opinion delivered June 24, 1985

*Barry J. Watkins*, for appellant.

*Davis, Cox & Wright*, by: *Constance G. Clark*, for appellee.

JACK HOLT, JR., Chief Justice. At issue in this case is the liability of a bank for honoring transactions conducted by one of co-signatories on an account. The trial court found the bank was protected by statute and granted partial summary judgment on those grounds. Our jurisdiction is pursuant to Sup. Ct. R. 29(1)(c) as we are being asked to interpret the applicable statutes.

The facts which gave rise to this cause of action are as follows. In February, 1979, the appellant Thea Clemens, who was then Thea Howes, executed a general power of attorney naming Jack Howes, at that time her husband, as her attorney in fact. In May of 1979, Jack and Thea Howes borrowed money from the appellee, First National Bank of Berryville, Arkansas, for the purchase of Ron's Liquor Store in Berryville. The loan of $46,000 was evidenced by a promissory note and secured by stock in IDS New Dimensions Fund, Inc., owned by Mrs. Howes. During the closing of the loan the bank was given a copy of the general power of attorney from Thea Howes in favor of Jack Howes by Mr. Howes. At the same time, the Howeses opened a checking account in the name of Ron's Liquor Store on which they, together with an employee, were authorized signatories. The $46,000 was deposited in the liquor store account.

In September 1979, Jack Howes told Burton George, president of appellee bank, that he wanted to redeem the IDS stock to pay off the note to the bank and increase the store's inventory. The bank prepared a letter of redemption and sent it via Mr. Howes to Mrs. Howes for her signature. Mr. Howes returned the letter bearing what the bank believed to be Mrs. Howes' signature. The letter was then sent to IDS with a request that the proceeds be

credited to appellant's account.

On September 21, the stock proceeds of $63,671.96 were credited to the liquor store account. Of that amount, $47,098.84 was debited to pay off the $46,000 note and a $3,000 note executed by Jack Howes and, purportedly, by Thea Howes on September 13.

On December 13, 1979, Jack Howes presented a $14,671.40 check to the appellee for payment. The check was from State Farm Life Insurance Co., and represented the cash surrender value of a life insurance policy owned by Thea Howes. Unknown to the bank, the check bore the forged endorsement of Thea Howes. Of that sum, $4,055.44 went to pay off a $4,000 note executed by Jack Howes and purportedly, Thea Howes, on October 30; $3,000 went to Jack Howes in cash; and $7,615.96 was deposited in the liquor store account.

In January, 1980, the appellant discovered that her husband had redeemed her stock and cashed her life insurance policy after forging her name on the check. She telephoned Burton George, making him aware for the first time of her husband's improprieties. On February 11, 1980, the appellant executed a revocation of her general power of attorney and delivered a copy to Mr. George.

The parties were later divorced and on December 30, 1980, the appellant filed suit against appellee for negligence, breach of contract, conversion and fraud. The bank denied liability and moved for summary judgment on the grounds that they were protected to the extent the proceeds from the transactions were deposited to the liquor store account and that they relied on her power of attorney in liquidating the securities and honoring the check.

The trial court granted a partial summary judgment in favor of the bank, finding that the appellant had no cause of action to recover the $63,671.96 realized from the liquidation of the securities and deposited in the liquor store account, an account over which both parties had joint control. The court also found the appellant had no cause of action over the $7,615.96 of the insurance check deposited to the same account. The court held however that as to the $7,055.44 of the insurance proceeds not deposited in the liquor store account, there remained a genuine

issue of material fact to be litigated between the parties.

The appellant appealed the trial court's decision, but the appeal was dismissed by this court as untimely in the absence of a final judgment. A trial was held on the remaining issues on August 20, 1984 and the jury returned a verdict for the appellee. The appellant brings this appeal from the partial summary judgment granted by the trial court.

██ In reviewing motions for summary judgment, the burden is on the moving party to demonstrate that there is no genuine issue of fact for trial. The evidence submitted in support of the motion is viewed most favorably to the party against whom the relief is sought. *Walker* v. *Stephens*, 3 Ark. App. 205, 626 S.W.2d 200 (1981). "Summary judgment is not proper where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable men might differ." *Walker*.

█ The trial court based its decision as to the stock proceeds on Ark. Stat. Ann. § 67-521 (Repl. 1980) (repealed in 1983) which provides:

> When a deposit shall have been made in the names of two [2] or more persons and in form to be paid to any of the persons so named, such deposit and any additions thereto made by any of the persons named in the account, shall become the property of such persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any of said persons. Such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge of said bank for all payments made on account of such deposit prior to the receipt by said bank of notice in writing signed by any one of said joint tenants not to pay such deposit in accordance with the terms thereof.

The appellant offers three reasons why this statute is inapplicable. First, she argues the statute applies "[w]hen a deposit shall have been made in the names of two or more persons" but this deposit was made in the name of "Ron's Liquor Store", not in the names of Jack and Thea Howes. This contention is without merit. The appellee loaned money to Jack and

Thea Howes to purchase the liquor store and that money was placed in the liquor store account on which Jack and Thea Howes were co-signatories. The deposit made to the liquor store account could be paid to either Jack or Thea Howes and therefore meets the requirements of the statute.

Second, the appellant contends that before the statute applies, the addition to the account must be made by one of the persons named in the account. The redemption checks sent by IDS were made payable to "First National Bank for account of Thea W. Howes." The appellant maintains that the deposit was made by the appellee instead of by the appellant. This argument elevates form over substance. Whether the deposit was made by one or the other parties is irrelevant. The point is that it was deposited to an account in their joint ownership.

The final basis urged by the appellant is that under § 67-521 there must be a withdrawal by a person named on the account and here, the appellee actually debited the account. Again, form is being asserted over substance. The withdrawals, like the deposit, were made at the direction of Jack Howes, who is one of the persons authorized to draw on the account.

■ We have held that the purpose of § 67-521 is to protect "the bank in making payments from deposits in the names of any two persons," *Cook* v. *Bevill*, 246 Ark. 805, 440 S.W.2d 570 (1969). The bank was acting pursuant to Jack Howes' instructions when it withdrew the $47,098.84 to pay off the parties' loan and when it withdrew $3,006.56 to satisfy the second note. The balance of the proceeds remained in the liquor store account and therefore became the property of both Jack Howes and the appellant. The bank's action was protected by § 67-521.

■ The appellant's remaining argument concerns the second transaction where the appellee honored a forged endorsement on an insurance check. Arkansas Stat. Ann. § 85-3-419 (1)(c) (Add. 1961) provides that an instrument is converted when it is paid on a forged endorsement. There is a common law exception to this rule however when the proceeds of the forged instrument are paid to the person whom the drawer intended to receive them, *Starkey Construction, Inc.* v. *Elcon, Inc.*, 248 Ark. 958, 457 S.W.2d 509 (1970). The trial court found that the insurance check was deposited to the liquor store account. The court said:

Although the money did not reach Plaintiff's [appellant's] hands in the manner she expected, it is true that it reached her and was credited to the Ron's Liquor Store account on which she was an authorized signatory and owner. Her loss was caused by the subsequent actions of Jack Howes.

■ In *Starkey*, supra, this court recognized the common law exception and stated, "We cannot believe that it was the intent of the General Assembly to hold a drawee (the bank) liable where the money actually reached the parties intended by the drawer of the check." The court further found that it is a "principle of statutory construction that a statute will not be construed so as to overrule a principle of established common law, unless it is made plain by the act that such a change in the established law is intended."

The appellant attempted to distinguish *Starkey* by saying that in that case, the money actually reached the intended payees, while there the proceeds were deposited in an account on which appellant could sign, but there is no proof she received the money. Nevertheless, since the appellant was a co-signer on the account, the money was available to her at all times and, as the trial court held, the money reached her although not in a manner she expected.

Authority for the common law exception to § 85-3-419 is also found in *Merchants' Nat'l Bk.* v. *Home Bldg. & Savings Ass'n*, 180 Ark. 464, 22 S.W.2d 15 (1929). In *Merchants*, the court held a bank not liable for cashing checks, payable jointly to an agent for a savings and loan association and the association's borrower, upon forged endorsements. The court found that the proceeds of the checks reached the agent's hands and were credited to the agency account exactly as if the checks had been properly endorsed.

The loss was sustained through Dewberry's [the agent's] improper use of the money after it came to his hands. It is true the money did not reach his hands in the manner the association expected, but it is nevertheless true that it did reach him and was credited to his agency account, and was thereafter misused, and thus the loss was caused.

*Merchants*, supra.

The appellant again attempted to distinguish the instant case by saying that Thea Howes did not create the situation which caused her loss, while the savings and loan in *Merchants* did create the situation by creating the agency. Actually, however, by giving Jack Howes her general power of attorney, the appellant *did* create the situation which resulted in such substantial loss to her. The misuse of the funds occurred after they were deposited in the liquor store account and were withdrawn by Jack Howes. The appellee and the appellant were both innocent in the transactions, but Thea Howes' act in granting the power of attorney is the act which most contributed to producing the loss. The loss must therefore fall upon her. *Cureton* v. *Farmers' State Bank*, 147 Ark. 312, 227 S.W. 423 (1921).

■ Since the bank is shielded from liability by statute and common law, the trial court was correct when it granted a partial summary judgment.

Affirmed.

GEORGE ROSE SMITH, J., not participating.