Don RAGAR *v.* Tad KRUG, Et Al.

89-325                                              794 S.W.2d 151

Supreme Court of Arkansas
Opinion delivered July 16, 1990

*David Hodges* and *Gene O'Daniel*, for appellant.

*Dover & Dixon, P.A.,* by: *John B. Peace* and *Suzanne Antley*, for appellees.

JAMES D. SPROTT, Special Chief Justice. This is the sixth time this case has been before this court. *Ragar v. Hooper*, 299 Ark. 345, 772 S.W.2d 594 (1989); *Ragar v. Hooper*, 298 Ark. 353, 767 S.W.2d 521 (1989); *Hooper-Bond Ltd. Partnership Fund III v. Ragar*, 294 Ark. 373, 742 S.W.2d 947 (1988); *Ragar v. Hooper-Bond Ltd. Partnership Fund III*, 293 Ark. 182, 735 S.W.2d 706 (1987); *Hooper v. Ragar*, 289 Ark. 152, 711 S.W.2d 148 (1986). We tracked the procedural history of this case through the various appeals in the last opinion rendered by this Court. *Ragar v. Hooper*, 299 Ark. 345, 772 S.W.2d 594 (1989). The sole issue for consideration is whether the chancery court erred in granting summary judgment to appellees, Tad Krug, et al. on Cause of Action No. 4 of appellant's, Don Ragar's, Complaint filed March 20, 1987. The Chancellor's action in granting summary judgment on the same Cause of Action No. 4

was previously reversed by this Court, but the reversal was based on a procedural error rather than on the merits of whether summary judgment should have been granted or not, *Ragar* v. *Hooper*, 298 Ark. 353, 767 S.W.2d 521 (1989); on remand and after an appropriate hearing, summary judgment was again granted, and this appeal has followed.

The appellant and appellees were the limited partners in a limited partnership originally known as Hooper-Bond Limited Partnership Fund III, which is now known as Shackleford Street Development Company, and which was involved in real estate development. At the time of its inception, Joseph "Buz" Hooper, Boyd Bond, and Hooper-Bond Company were the three general partners of the limited partnership, however, they have been replaced by Flake & Company, Inc., which now acts as the general partner. At least since 1986, litigation plagued the general and limited partners in the development projects to the point that the appellant filed his Complaint in Equity in which he sought an accounting by the three original general partners, certain other relief and specifically set forth Cause of Action No. 4, as follows:

> 12. Plaintiff, Don Ragar, asks for an accounting from all of the limited partners to determine whether or not all of the proceeds from the limited partners obligated to the Shackleford Street Development Company or Hooper-Bond Limited Partnership Fund III have been paid. It is the information of the Plaintiff herein that certain limited partners executed a note to the partnership as opposed to paying cash to the partnership. There should be a determination as to whether all limited partners have fully paid to the partnership in accordance with the terms and conditions of the original partnership agreement. In the event that some limited partners may owe the partnership funds, then Plaintiff asks for the Court to declare said sum immediately due and payable from the limited partner to the Shackleford Street Development Company.

After filing their answer, the appellees filed a Motion for Summary Judgment as to this cause of action and attached to it the affidavit of John Toney, a certified public accountant with Thomas & Thomas, the accounting firm employed by the limited

partnership. Mr. Toney stated in his affidavit that his accounting firm had prepared the tax returns for the limited partnership for 1980 through 1986. Attached to his affidavit was a report he prepared from the accounting work papers in his files and in the files of the previous accounting firm used by the limited partnership, and from the income tax returns of the partnership. The report and his investigation reflect that all capital contributions were paid to the partnership on a pro rata basis based upon the respective ownership percentages of the limited partners.

Mr. Toney's affidavit further states that all of the partners with the exception of the appellant and Clinton Pope, whom the appellant did not include as a defendant, had contributed to the limited partnership an amount which approximated their respective pro rata share of the total contributions. The report reflects capital contributions by the various limited partners in amounts equal to the ownership percentages shown to be applicable to each limited partner, except for Clinton Pope and the appellant. The report also reflects a total net contribution by the limited partners of $355,504.00.

The appellees also attached to their motion the affidavit of James H. Penick, III, the attorney for Flake & Company, Inc., the successor general partner of the limited partnership. Mr. Penick states in the affidavit that he received certain partnership documents when Flake became the general partner, including the Certificate of Limited Partnership filed September 4, 1979, and a certain Closing Statement dated September 7, 1979, both of which were attached to the affidavit. Mr. Penick states, and a review of the two documents shows, there was a total amount of $355,000 in cash delivered to the partnership upon closing and the cash down-payment on the Closing Statement is consistent with the cash designated in the Certificate as deposited with the partnership prior to closing.

The last item attached to the motion is the affidavit of Timothy P. Farrell and F. Tad Krug, two of the appellees. In it, they recite that they had executed a promissory note for an amount equal to the initial cash outlay required for them to purchase 3.5% and 3.75% ownership percentages in the limited partnership and that the note was payable to Hooper-Bond Company, one of the general partners, in exchange for the cash

payment being made to the limited partnership. The promissory note was to be repaid from distributions by the limited partnership to Farrell and Krug.

When the appellee's Motion for Summary Judgment was granted by the Chancellor prior to a hearing which had been scheduled for the motion, the cause was appealed, and this Court remanded the case. *Ragar* v. *Hooper*, 298 Ark. 353, 767 S.W.2d 521 (1989). This Court stated that the Chancellor should not have granted summary judgment before the day scheduled for a hearing, even if setting a specific hearing date was not necessary. This Court ruled it was not clear that the appellant could not obtain the necessary proof to rebut the allegations in the summary judgment motion.

After remand, the appellees renewed their Motion for Summary Judgment. The appellant relied, in response, on the affidavits of appellant and the discovery depositions of James H. Penick, III, F. Tad Krug, Timothy P. Farrell, and Howard E. Hardin, another appellee and limited partner. In his deposition, Mr. Penick was asked whether he could reconstruct the income and expenditures in the partnership for the period prior to the time Frost & Company, Inc., became the general partner. He stated:

> A. Our accountants apparently felt good enough about it to file tax returns and not have to go back and amend any previous ones. So far as I was concerned, relying on them, the affairs were accounted for.
> Q. Okay. Now, where — have you ever rendered an accounting based upon what Allen Duncan did and Frost & Company did?
> A. He said it was unaccountable. He said he could not make — do an audit. And I did not want to — it did not seem to me to be prudent to pursue it any further, to waste the partnership's money to audit a partnership account which, in a good accountant's opinion — I've dealt with · Allen Duncan before — it was not auditable.
> Q. Let's change the terminology then. If it's not auditable, that means something in accounting separate than having an accounting of all the income and expenses, doesn't it?
> A. That's correct.

Allen Duncan was an auditor employed to review the financial records of the limited partnership for activities prior to Frost & Company, Inc., becoming the general partner. It was the firm of Thomas & Thomas, the employer of John Toney, which actually had prepared the income tax returns for the limited partnership during that period.

The appellant also relies on the depositions of three limited partners in opposition to the summary judgment. In his deposition, Mr. Krug stated:

> Q. So did you find evidence where Hooper-Bond put money into the partnership for your benefit, as well as Tim Farrell?
> A. Yes.
> Q. So you were looking at the accounting record to demonstrate the credit for that?
> A. Uh-huh.
> Q. Aside from what you saw down at Thomas & Thomas, have you been given a, quote, "accounting," unquote, as I have used that term, which is a total compilation of expenditures and income?
> A. Well, we used to get things in the mail. I can't tell you — I mean, what would you define as an accounting or not. We used to get thing in the mail all the time about things that were going on showing different percentages, but —
> Q. Okay.
> A. What do you mean by "accounting"?
> Q. Well, it's just a document that goes back and shows all the money coming into the partnership and all the uses of the funds.
> A. Well, I was on a mailing list and I got the same thing that everyone else did. I don't know whether that would be —
>
> Q. Do you consider that you have had a full accounting of the Hooper-Bond, III Partnership in the sense that we've used that with Mr. Farrell and Mr. Hardin when they answered they didn't? I think they said no, they didn't feel like they had an accounting.
> A. Probably not.

Mr. Farrell had already given his deposition also under the

questioning of appellant's counsel, in part as follows:

> Q. Do you remember how much partnership interest that you had in that or that you still have?
> A. 3.75, I believe.
> Q. Do you know how much you paid for that?
> A. Around 13,000, or something like that.
> Q. Okay. Now, how much did you pay in cash?
> A. I took a note, did not pay cash. Well, I guess there was cash put in.
> Q. Now, take me through how that worked that you put up a note and no cash.
> A. Well, we were — we knew the project was coming up and we were asked to join the project and we didn't have the money. So Buz Hooper came to us and said, "We will lend you the money at a current rate of interest, and you can pay us back out of the land sales." So we thought that was a pretty good deal, so we did it.
> Q. Do you know whether or not the money was actually deposited into the partnership by Hooper?
> A. We were told by Thomas & Thomas that the accounting of it was correct.
> Q. You were talking about Thomas & Thomas that Hooper put in the 13,000 for you?
> A. The accounting, yes. We were asked — later. This was after the fact, we were told that the accounting was — showed that it had come in.
> Q. Okay. But aside from what Thomas & Thomas told you, do you have any personal knowledge —
> A. No.
> Q. — that, in fact, they did put the money in?
> A. No.

Mr. Hardin, likewise under the questioning of appellant's counsel, testified in his deposition as follows:

> Q. All right. Now, I wanted to ask you about the accounting, if any, that you've ever gotten as to Hooper-Bond, III affairs, and I think accounting may be a broad word. But can you tell me whether or not you've ever gotten a statement from the general partner as to the expenses and income of that Hooper-Bond, III?

A. No.

. . .

Q. Okay. So that you have not been provided, Mr. Hardin, at any time from this date back, with what you would call an accounting of the affairs of Hooper-Bond, III that's satisfactory to you.
A. No.

The appellant gave two affidavits used in opposition to the appellees' motion. In the first, appellant stated that he had never been furnished an accounting in the Hooper-Bond Limited Partnership Fund III, subsequently known as Shackleford Street Development Company, either by the original or successor general partners. After Flake & Company, Inc., became general partner, he said, all the limited partners voted to hire an accountant, Allen Duncan, to give an accounting of the affairs of the partnership. Mr. Duncan advised the partnership that he could not give such an accounting based upon the information that he had available. Mr. Ragar reiterated his desire for an accounting from the previous and successor general partners.

The second affidavit of the appellant in opposition to the Motion merely states that he has paid to the limited partnership all of the legal and appropriate obligations as a limited partner.

The Chancellor considered the Motion for Summary Judgment, the appellant's response and the affidavits and depositions at a hearing held July 20, 1989, at which time oral arguments were presented. Upon the conclusion of the hearing, the Chancellor granted appellees' motion, and in his order found that the motion was directed solely at Cause of Action No. 4, which requested an accounting from the limited partners, showing that each limited partner had contributed his pro rata obligation to the partnership; that the documents and affidavits attached to appellees' motion showed that each limited partner had, in fact, contributed his pro rata obligation; and that the appellees' proof was not satisfactorily refuted by any evidence presented by the appellant. It is from this Order which the appellant now appeals, alleging merely that the Chancellor erred in granting summary judgment.

A summary judgment is to be rendered forthwith if the

pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits filed, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A.R.C.P. Rule 56(c). The standard for review of a summary judgment was recently restated in the case of *Pinkston* v. *Lovell*, 296 Ark. 543, 547, 759 S.W.2d 20, 22 (1988):

> Summary judgment, like a mistrial, is an extreme remedy. It will be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c) of the Arkansas Rules of Civil Procedure. The burden of proving that there is no genuine issue of material fact is upon the appellee in this case, and all proof submitted must be viewed in a light most favorable to the party resisting the motion—appellant Pinkston. *Ford* v. *Cunningham*, 291 Ark. 56, 722 S.W.2d 567 (1987). Any doubts and inferences must be resolved against the moving party—appellee Lovell.

Thus, the appellees here bear the burden of proving there is no genuine issue of material fact, and we are to consider all proof submitted in a light most favorable to the appellant, Ragar.

The analysis of the facts must begin, however, within the confines of the specific relief sought by the appellant. His Cause of Action No. 4 seeks simply an accounting of the limited partners to determine if all of the named defendants, the appellees herein, had made contributions to the partnership in accordance with the legal obligation imposed upon them by the limited partnership certificate. The cause of action is not one seeking a general accounting of either the limited partnership or the general partners. This Court so limited the issue on remand when the case was returned to the Chancellor for consideration of Cause of Action No. 4. *Ragar* v. *Hooper*, 298 Ark. 353, 767 S.W.2d 521 (1989).

Since the issue is whether or not the limited partners have paid their legal obligations, we need to inquire how the fact of payment might be proved. Obviously, it may be proved from either the records of the party paying the obligation or from the records of the party to whom the obligation is owed. The record in

this case does not include proof from the records of the limited partners who owed the obligation; however, the record does contain proof from the records of the recipient of the obligation. John Toney, the certified public accountant for the general partner of the partnership, testified by affidavit that "all capital contributions were paid to the partnership on a pro rata basis" and "all of the partners with the exception of Don Ragar and Clinton Pope contributed to the partnership an amount which approximates their respective pro rata share of the total contributions." Ragar did not include Pope as a party defendant, so the exception relating to Pope is not relevant here; likewise, Ragar in his affidavit acknowledged that he had paid all sums owed to the partnership, except a sum he called illegal, which represented the "exception" to Toney's affidavit. Thus, the records of the recipient of the obligation, that is, the limited partnership, reflect that all of the obligations of the limited partners for capital contributions have been paid.

The affidavit of James H. Penick, III specifically states that all of the cash necessary for the first development project of the limited partnership was in its hands three days after it came into existence with the filing of its certificate with the Secretary of State on September 4, 1979. Further, the closing statement dated September 7, 1979, is an independent record showing that there was at least $348,000.00 cash in the hands of the limited partnership, which was used as a down payment on the first development projects. There is not even a hint of evidence to contradict this latter affidavit or that the cash was in fact in the hands of the limited partnership.

To contradict these facts, appellant relies on three limited partners' statements under oath that they had not been provided an accounting by the former general partner. It is clear from a reading of the depositions that appellant's counsel was using the word "accounting" in a very broad manner, relating it to a total record of income and expenses. None of the three were asked nor did they say whether or not they had any question whether the limited partners had made all of the appropriate contributions. There are no cross complaints seeking any relief among the appellees. And again, the relief sought which has been denied by summary judgment is *not* a request for a full accounting of the limited partnership or the general partner, but merely a request

for proof that all limited partners have contributed their full legal obligation. None of the three depositions controvert the testimony of Mr. Toney that all obligations have been met. We find no merit to the appellant's arguments that proof of the payment of the obligations must come from the limited partners' records as opposed to the records of the limited partnership itself.

The appellant also argues that two of the limited partners' contributions were not in cash. Krug and Farrell, appellant says, relied upon the original general partner to make the contributions. We see no significance between a loan of cash, evidenced by a legal promissory note, whether from a bank or any other entity, when the cash is in fact contributed to the limited partnership. The issue is whether the cash was contributed to the limited partnership, not the source of the cash. It is important to note that there is no allegation that the contribution of Krug and Farrell was in the form of a note to the limited partnership itself.

Appellant argues that the statement of Allen Duncan proves, or at least creates the inference, that the accounting records relied on by Mr. Toney are inaccurate, and therefore, an issue remains. However, a close review of Mr. Penick's statements as to Mr. Duncan's activities creates no inference as to inaccuracy about the partners' capital contributions. Penick quotes Duncan as saying he could not make or do an audit. Penick says it seemed a waste of partnership money to try to audit the records, when Mr. Duncan said they were not auditable. However, appellant's counsel specifically recognized that being "unauditable" means something in accounting principles quite different from having an accounting of all expenses and income. Appellant's counsel thus recognized that Duncan's remarks do not denigrate the accuracy of an accounting of the net income records of the partnership, and the remarks certainly do not call into question records relating to partnership capital contributions. Those records were clearly adequate and accurate enough for seven years of income tax returns without amendment or apparent problems in audits. If one accountant's remark that certain records were "unauditable" rendered suspect the accuracy of another CPA's review of records as to capital contributions, we would be improperly permitting a mere suspicion on a plaintiff's part to prolong litigation for a fishing expedition. *BWH, Inc.* v. *Metropolitan Nat'l Bank*, 267 Ark. 182, 590

S.W.2d 247 (1980).

The blunt fact remains: There has been nothing presented by the appellant to controvert the testimony of Toney and Penick that all the contributions were in fact made and that the cash was in fact in the hands of the partnership. Although the record reflects that Mr. Toney offered to make the records which were the basis of his affidavit available to appellant, we have no evidence controverting the report he made and attached to his affidavit. We recognize that the object of summary judgment proceedings is not to try the issues, but to determine if there are any issues to be tried. However, we have also said that the purpose of summary judgment is to expeditiously determine cases without the necessity for formal trial where there is no substantial issue of fact; if no factual dispute exists, the case should be disposed of by summary judgment rather than exposing the litigants to unnecessary delay, work, and expense in going to trial when the trial judge would be bound to direct a verdict after all the evidence. *Joey Brown Interest, Inc.* v. *Merchants Nat'l Bank*, 284 Ark. 418, 683 S.W.2d 601 (1985).

We find that the Chancellor was correct in ruling there are no remaining issues with regard to appellant's Cause of Action No. 4, and appellant's efforts to obtain a general accounting from the limited partnership and the general partners are likewise not an issue here. Having found that the record herein shows no genuine issue as to any material fact concerning Cause of Action No. 4, we must affirm.

Affirmed.

HOLT, C.J., and HAYS and PRICE, JJ., not participating.

Special Justices R.H. "BUDDY" HIXSON and ALEX G. STREETT dissent.

R. H. "BUDDY" HIXSON, Special Justice, dissenting. In the case of *Ragar* v. *Hooper*, 299 Ark. 345, 772 S.W.2d 594 (1989), this Court correctly tracked the prior litigation between the parties. The parties have litigated both in circuit and chancery court. The matter before the Court at this time is a chancery action that has been before this Court in *Ragar* v. *Hooper*, 298 Ark. 353, 767 S.W.2d 521 (1989), wherein the first three counts in the plaintiff's present cause of action were correctly deter-

mined by this Court to have been decided at prior litigation and were thus barred by *res judicata*. That left appellant's Cause of Action No. 4 remaining to be decided in chancery court. The appellees had filed a Motion for Summary Judgment in the last above cited Ragar case, and the lower court had granted that Motion for Summary Judgment on a date not set for hearing. Therefore, this Court remanded the case to the trial court for an appropriate hearing, with the required notice, on the Motion for Summary Judgment filed by appellees. This Court, in remanding this cause, did so because the lower court should not have granted the summary judgment before the date it was set for hearing, unless it clearly appeared that Ragar could produce no proof contrary to the affidavits. When the lower court heard the motion, after a timely setting, it again granted the appellees' motion from which the appellant appealed to this Court. The sole issue before the Court at this time is whether or not the lower court properly ruled on appellees' Motion for Summary Judgment.

Cause of Action No. 4 of appellant's complaint asked for an accounting from all the limited partners to determine whether or not all of the proceeds from the limited partners obligated to the limited partnership had, in fact, been paid. This Court, in *Ragar v. Hooper*, 298 Ark. 353, 767 S.W.2d 521 (1989), determined that limited partners were entitled to an accounting from the other limited partners when they remanded the case to the lower court for a proper presentation of that issue to the lower court. The legislature had set forth various responsibilities and limitations on limited partners in Ark. Code Ann. § 4-44-113 (1987) and Ark. Code Ann. § 4-44-104 (1987). Further, this Court in *Stuckey* v. *Douglas*, 240 Ark. 637, 401 S.W.2d 218 (1966) and *Frank* v. *Pickens & Son Co.*, 264 Ark. 307, 572 S.W.2d 133 (1978) has held that accountings are proper devices to determine if the partners have conducted themselves properly and complied with the terms of the partnership agreement. The appellees addressed Cause of Action No. 4 by Motion for Summary Judgment with various affidavits and depositions, none of which, in fact, provides an accounting from the limited partners, but are directed toward the accuracy, or lack of accuracy, of the accounting of the general partner that the limited partners had contributed as agreed. If the limited partners are entitled to an accounting from each other as to their contributions, an account-

ing from the general partner as to the contributions of the limited partners does not, in fact, provide an accounting of the limited partners to determine if they have contributed as agreed.

It is apparent that the general partner was attempting to thwart the appellant's right to an accounting from the limited partners in that they had in prior proceedings filed for a protective order to prohibit appellant from deposing the sixteen (16) limited partners. The record is clear from the affidavits and/or depositions from the certified public accounting firm of Thomas and Thomas that the information furnished to them as to the general partners' transactions is limited to the information as represented to them by management, the general partner. They did not audit or review the accompanying statement of charges and partners' capital accounts, and therefore they did not express an opinion or any other form of assurance upon it.

Limited partners are entitled to an accounting of the limited partners. An accounting of the general partners as to the activities of the limited partner does not satisfy that legal right. The action of the lower court in granting appellees' Summary Judgment Motion has in effect ruled that the accounting furnished by the general partner answers the legal right of the limited partners to account to one another. The lower court should have required an accounting from the limited partners as to their contributions and withdrawals to determine if same complies with the agreements of the parties. It could be done simply by the showing of documented evidence of each limited partner's contributions and withdrawals.

Summary Judgments are extreme remedies and should not be granted where evidence presents itself in such a manner that reasonable men might differ. *Clemons* v. *First Nat'l Bank*, 286 Ark. 290, 692 S.W.2d 222 (1985). The question here is, has there been an accounting from the limited partners? There has not.

For the reasons above, I would reverse and remand the lower court's decision with directions that the limited partners be required to account for their contributions and withdrawals to determine if same comply with the laws governing partnerships and the agreement of the parties.

Special Justice ALEX G. STREETT joins in this dissent.