O'PETRO ENERGY CORPORATION, an Oklahoma corporation, Appellee,

v.

CANADIAN STATE BANK, an Oklahoma banking corporation, Appellant.

No. 68988.

Supreme Court of Oklahoma.

Sept. 15, 1992.

Stephen G. Solomon, Derryberry, Quigley, Parrish, Solomon & Blankenship, Oklahoma City, for appellee.

Michael J. Tullius, Oklahoma City, Robert W. Nelson, Michael N. Brown, Ramey & Nelson, Yukon, for appellant.

LAVENDER, Justice.

We are asked to decide in this case of first impression whether a Bank subjects itself to liability by accepting a check bearing a restrictive indorsement, "for deposit only" and depositing it into an account different from the named party on the front of the check. The trial court held the bank liable. We reverse.

## FACTS

On June 17, 1982 O'Petro Energy corporation (Appellee), a publicly held corporation with approximately 350 to 400 shareholders, borrowed $165,000.00 from Northwest Bank. The collateral for the loan was a certificate of deposit held by the company at Northwest Bank for $165,000.00. The loan proceeds were in a cashier's check made payable to O'Petro Energy Corporation. Terry Miller, president of O'Petro received the check on June 22, 1982.

Miller took the check to his bank in Yukon, Canadian State Bank (hereinafter Bank), wrote on the back of the check, "for, deposit only" and instructed the teller to give the check and his deposit slip to the chief cashier. The cashier deposited the check into Miller's personal account and then at Miller's direction, wired the proceeds to another bank to cover a check for insufficient funds written by Miller a few days before.

O'Petro brought suit alleging Defendant was negligent in accepting the deposit and in allowing a conversion of the funds. Additionally, O'Petro sought punitive damages asserting the Bank's actions were willful, intentional and malicious.

The trial court upon hearing evidence from the Bank's first witness, stopped the trial and withdrew the case from the jury. The judge entered judgment sua sponte for O'Petro. Thereafter, the Bank made an offer of proof which the court rejected and moved for a directed verdict which the court denied. The Court of Appeals affirmed finding no reversible error. We previously granted certiorari.

## I.

O'Petro claimed the indorsement on the back of the check by Terry Miller stating "for deposit only" was a restrictive indorsement as defined by statute and that Appel-

lant Bank was compelled to deposit the funds into an *O'Petro* account. In that the Bank failed to follow the restrictive indorsement, it is liable to O'Petro for the full amount of the check.

In 12A O.S.1981 § 3–205 the statute states:

> [a]n indorsement is restrictive which either
>
> (a) is conditional; or
>
> (b) purports to prohibit further transfer of the instrument; or
>
> (c) includes the words "for collection", *"for deposit"*, "pay any bank", or like terms signifying a purpose of deposit or collection; or
>
> (d) otherwise states that it is for the benefit or use of the indorser or of another person.

(emphasis added).

Section 3–206 explains the effect of a restrictive indorsement. Relevant portions state:

> (1) No restrictive indorsement prevents further transfer or negotiation of the instrument.
>
> (3) Except for an intermediary bank, any transferee under an indorsement which is conditional or includes the words "for collection", "for deposit", "pay any bank", or like terms (subparagraphs (a) and (c) of Section 3–205) *must pay or apply any value given by him for or on the security of the instrument consistently with the indorsement and to the extent that he does so he becomes a holder for value.* In addition such transferee is a holder in due course if he otherwise complies with the requirement of Section 3–202 on what constitutes a holder in due course.

(emphasis added).

In other words, O'Petro argues the Bank was required to deposit the money into an account for O'Petro Energy Corporation and that its action in depositing the check into Miller's personal account was equal to conversion. The corporation filed suit citing 12A O.S.1981 § 3–419(1)(c). That provision provides that "[a]n instrument is converted when ... it is paid on a forged indorsement."

The Bank maintains, however, that Miller's restrictive indorsement was not "forged" in that Miller had *authority* under the corporate borrowing resolution to indorse the check using the restrictive indorsement and accompanying deposit slip and to deposit the money into his personal account. Further, the Bank alleges that O'Petro should be estopped to claim conversion because the funds eventually benefitted O'Petro and that O'Petro knew this or should have known it.

The Bank urges us to address these issues of first impression which call for us to interpret certain provisions of the UCC. In that the trial court committed reversible error by not allowing the Bank to present relevant evidence in defense of its actions,[1] we reverse.

## II.

In *Grimshaw Co. v. First Nat. Bank & Tr. Co.*,[2] this court stated that "[a]n unauthorized payee indorsement is 'one made without actual, implied or apparent authority and includes a forgery.' "[3]

> As a general rule, a drawee bank which pays an item containing a payee indorsement not by or on authority of the payee does so with its own funds and may not charge the drawer's account.
>
> A drawee bank may, of course, attempt to establish the indorsement as being that of the intended payee or his authorized agent. *A payee indorsement is effective when made by an authorized*

---

1. *Re Adoption of G.,* 656 P.2d 262, 266 (Okla.1982). A trial court commits reversible error if it "knowingly" excludes relevant evidence that affects the substantial right of a party.

2. 563 P.2d 117 (Okla.1977).

3. *Id.* at 120. [*see* now 12A O.S.1991 § 1–201(43) ].

agent or representative, 'and his authority to make it may be established as in other cases of representation.' 12A O.S.1971 § 3–403(1) [see now 12A O.S.1991 § 3–403].[4]

The policy considerations behind the various UCC defenses intend to foster the commercial reliability of negotiable paper. The general theory being that the loss must fall, as among the innocent parties, on that person nearest to the individual who caused the loss and supposedly, the one who could have prevented it.[5] Consequently, the UCC places the burden on the first bank in the collection chain to insure the indorsement is authentic as it is the bank in the best position to discover the forgery.[6]

■ Therefore, "barring exceptional circumstances, the general rule is that *failure of a bank to inquire when an individual cashes a check made payable to a corporate payee and puts the money in his personal account is an unreasonable commercial banking practice as a matter of law.*"[7] However, in our case, the Bank purportedly called the drawer bank and talked with the loan officer familiar with O'Petro's corporate borrowing resolution. Thereafter, the Bank accepted Miller's authority to so "indorse" the check.

■ The Bank attempted to present evidence that it was Miller's intent by way of his restrictive indorsement to have the funds deposited into his personal account. The bank maintained Miller had authority to indorse the check under the terms of the corporate borrowing resolution. The corporate borrowing resolution stated in pertinent part:

Be it further resolved that *said bank is authorized to follow the instructions of said officers in the disposition of any proceeds of any such loan,* credit, dis-

count, or sale, whether for such loan, credit, discount, or sale, whether for payment *to or for credit in* this or any other bank to *the account of this corporation, or such officers's individually* or in their official capacity, or any third person, or otherwise.

(emphasis added).

The evidence the Bank wanted to introduce went straight to the issue presented—whether Miller had the authority to sign the check. By definition a forgery includes an "unauthorized signature." A signature that *is authorized,* however, is not a forgery. If Miller had the right to deposit the check into his personal account, then the bank was not responsible to O'Petro for following Miller's instructions.

Similarly, if Miller had the authority to sign the check then the *manner* in which the check was indorsed would not create any liability for the Bank if the Bank was complying with Miller's instructions. In that a restrictive indorsement does not prevent further transfer or negotiation of the check,[8] even if Miller's indorsement meant, "deposit the check into an O'Petro account," Miller's accompanying deposit slip canceled the indorsement out the same as if Miller had drawn a line through the restriction and further negotiated it with his personal indorsement.

In other words, if Miller had the authority to indorse the check and to put it into any account he wanted, and there was evidence the Bank made inquiry into this authority, then "how" Miller went about doing it was immaterial if the Bank complied with Miller's authorized instructions. If Miller's intent was carried out, then no one else had the right to complain at least as to that banking transaction and the only transaction we are concerned with here. While Miller may have subsequently mis-

---

**4.** *Id.* at 120.

**5.** *Id.* at 121.

**6.** *Ames v. Great Southern Bank,* 672 S.W.2d 447, 450 (Tex.1984).

**7.** *See Aetna Ca. & Sur. Co. v. Hepler State Bank,* 6 Kan.App.2d 543, 630 P.2d 721, 728 (1981) and citations therein.

**8.** 12A O.S.1981 § 3–206(1).

used the funds, this fact was irrelevant as to the Bank's liability concerning the deposit.

We are not saying that in all circumstances, a bank that fails to follow a restrictive indorsement is blameless. "Of course if a bank fails to abide by a restrictive endorsement per se, absent a waiver, it does so at its peril."[9] However, in our case, there was evidence from which it might be found that Miller as President of O'Petro had the right to deposit the check into his personal account. Under these circumstances, the bank was not obligated to go further and question Miller's intended use of the funds.

Whether Miller had the authority and whether the bank acted in a commercially reasonable manner are questions of fact that the jury should have decided. We find the trial judge erred in not allowing the bank to present such evidence to the jury.

## III.

Further, we recognize that the UCC has not usurped the common law remedy by which there is "authority supporting protection of the bank that pays *without indorsement* as long as the actual payee or person *authorized* by payee receives the money ordered by the drawer to be

paid."[10] The bank made an offer of proof that there was evidence the loan proceeds, though deposited into Miller's personal checking account, eventually benefitted O'Petro and that "O'Petro" knew this or should have known this and should be estopped from complaining of it now.[11]

If on remand, the jury should find the Bank acted unreasonably in accepting Miller's deposit with the restrictive indorsement, we hold that additional evidence may be introduced relevant to the Bank's alternate defenses. We, therefore, reverse the case for a new trial consistent with our findings.

HODGES, V.C.J., and SIMMS, HARGRAVE, ALMA WILSON, KAUGER, SUMMERS and WATT, JJ., concur.

OPALA, C.J., concurs in result.

**9.** *Rutherford v. Darwin,* 95 N.M. 340, 622 P.2d 245 (App.1980).

**10.** *See Clemens v. First Nat. Bank,* 286 Ark. 290, 692 S.W.2d 222, 225 (1985)(emphasis added). "There is a common law exception to this rule [Arkansas Stat.Ann. § 85–3–419(1)(c) ] however when the proceeds of the forged instrument are paid to the person whom the drawer intended to receive them".... "We cannot believe that it was the intent of the General Assembly to hold a drawee (the bank) liable where the money actually reached the parties intended by the drawer of the check." *Id.* 692 S.W.2d at 225 quoting *Starkey Constr., Inc. v. Elcon, Inc.,* 248 Ark. 958, 457 S.W.2d 509 (1970); *see also Maynard Investment Co. v. McCann,* 77 Wash.2d 616, 465 P.2d

657, 660 (1970) quoting *Coplin v. Maryland Trust Co.,* 222 Md. 119, 159 A.2d 356, 358 (1960). "It has long been held that, despite the almost universal custom of requiring a payee to indorse a check before payment, a bank is protected if it pays without indorsement, as long as the payee actually receives the money ordered by the drawer to be paid.... There is conclusive evidence that all of the funds represented by these two checks were paid to the creditors of the payee, as the payee and transferee had agreed. The cause against the National Bank of Commerce was properly dismissed."

**11.** *Accord Grimshaw Co. v. First Nat. Bank & Tr. Co.,* 563 P.2d 117 (Okl.1977); *see also Von Gohren v. Pacific National Bank,* 8 Wash.App. 245, 505 P.2d 467 (1973).